UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE HERMAN,<br><br>        Plaintiff,<br><br>    v.<br><br>BROOKDALE EMPLOYEE SERIVES LLC, et al.,<br><br>        Defendants. | Case No. 24-cv-04987-PCP<br><br>**ORDER COMPELLING ARBITRATION AND DISMISSING CASE**<br><br>Re: Dkt. No. 12 |

Plaintiff Bruce Herman signed an employment contract with defendant Brookdale Employee Services, LLC. After his termination in October 2023, Herman sued Brookdale asserting various causes of action related to his employment. Herman's contract contained a clause requiring any dispute to be resolved outside of court via binding arbitration, and Brookdale now moves to compel arbitration of Herman's claims. For the following reasons, the Court grants Brookdale's motion.

**BACKGROUND**

Herman started working for Brookdale on October 10, 2018 as a prep cook in Brookdale's Scotts Valley assisted living facility. He received multiple promotions over his five years of employment and was serving as the Assisted Living Director at Brookdale's San José location when Brookdale terminated his employment on October 18, 2023. Herman sued Brookdale in Santa Clara County Superior Court asserting ten causes of action related to age and disability discrimination, retaliation, and denial of employment benefits. Brookdale thereafter removed the case to federal court on the basis of this Court's diversity jurisdiction.

Herman signed a series of offer letters and other agreements in the course of his employment. On February 18, 2019, he received and signed an offer letter for a security position

at Brookdale's San José location. He also received an offer letter for a Marketing Coordinator position at Brookdale's Scotts Valley location on March 11, 2019, which he signed on March 19, 2019. Both letters contained the following language on the same page as the signature line:

> You will be offered a binding arbitration agreement. If you choose not to sign that agreement and begin working, you will still be bound by the binding arbitration agreement, as binding arbitration is a condition of employment with Brookdale.

Herman received Brookdale's Dispute Resolution Agreement ("arbitration agreement") and signed it on February 18, 2019. The arbitration agreement included the following clause:

> **Covered disputes**. Brookdale and I agree that **any** legal disputes arising out of or related to my employment (including, without limitation, those arising from the Application for Employment, my employment or termination of my employment) must be resolved using final and **binding** arbitration and not by a court or jury trial. That includes any legal dispute that has to do with any of the following: wage and hour law, seating, expense reimbursement, trade secrets, unfair competition, compensation, breaks or rest periods, uniform maintenance, training, discipline, termination (including defamation after my termination), discrimination, harassment, retaliation, transfer, demotion, or promotion.

Based on this agreement, Brookdale moves the Court to compel arbitration under the Federal Arbitration Act ("FAA"). Herman opposes the motion, contending that the agreement unconscionable and therefore unenforceable.

## LEGAL STANDARDS

The FAA provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this language makes clear, the FAA "reflects the fundamental principle that arbitration is a matter of contract." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147 (2024). And like other contracts, arbitration agreements are subject to "generally applicable contract defenses" like "fraud, duress, or unconscionability." *Lim v. TForce Logs., LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

In California, "[a] contract is unconscionable if one of the parties lacked a meaningful

2

choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (2019). Unconscionability includes both "a procedural and a substantive element." *Id.* The procedural element addresses the process by which the parties formed the contract and the substantive element addresses the fairness of the contract's terms. *Id.* The two elements need not be present in equal force; rather, courts evaluate them on "a sliding scale." *Id.* (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). Where the party challenging a contract's enforceability can show only minimal procedural unconscionability, courts require more evidence that the terms of the contract are substantively oppressive. *See id.* at 125–26. The converse is also true. *Id.* Finally, "the party asserting [unconscionability] bears the burden of proof." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

## ANALYSIS

### I. The arbitration agreement exhibits a small degree of procedural unconscionability.

Neither party disputes that the contract at issue is a contract of adhesion containing at least some degree of procedural unconscionability. A contract of adhesion is one that is "offered on a take-it-or-leave-it basis[.]" *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016). All "contracts of adhesion … contain a degree of procedural unconscionability," but because such contracts are "indispensable facts of modern life[, they] are generally enforced[.]" *Id.* at 1244.

A greater degree of procedural unconscionability exists where the formation of the contract involved "oppression or surprise due to unequal bargaining power." *Kho*, 8 Cal. at 125. Oppression involves a "lack of negotiation and meaningful choice," and surprise arises where a substantively unfair provision "is hidden within a prolix printed form." *Id.* The terms of a contract can also support a finding of surprise when they are "artfully hidden" and included by reference rather than "attach[ed] … to the contract for the [employee] to review." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003). Herman argues that the contract here arose from circumstances involving both surprise and oppression and that the Court should therefore find that the contract contains significant procedural unfairness.

The California Supreme Court considered the forms of oppression and surprise that can

3

support a finding of significant procedural unconscionability in *OTO, L.L.C. v. Kho*. In that case, the plaintiff's employer One Toyota "required [him] to sign the [arbitration] agreement to keep the job[.]" *Kho*, 8 Cal. 5th at 127. Given the operation of the company's time management system, "any time Kho spent reviewing the agreement would have reduced his pay." *Id.* Kho was thus placed in a position of economic oppression in which "Toyota conveyed the impression that negotiation efforts would be futile." *Id.* at 128.

The form of the of the agreement also left Kho surprised at its terms. The agreement was "a paragon of complexity … written in extremely small font." *Id.* All of the terms were contained in a "single dense paragraph covering … 51 lines." *Id.* The court concluded that the aim of the agreement was to "thwart, rather than promote, understanding." *Id.* at 129.

Unlike in *Kho*, the circumstances surrounding the formation of Herman's employment contract involved neither oppression nor surprise. Although Herman was offered the "take-it-or-leave-it" contract after he had started employment with Brookdale, he had only worked for Brookdale for a few months. He had not yet been employed for a "substantial length of time." *Kho*, 8 Cal. at 127. Herman does not allege that Brookdale reduced his pay for any time he spent reviewing the agreement. Nor does he allege that Brookdale prevented him from reviewing the agreement before signing it. In fact, the agreement clearly advised Herman of his right to consult with an attorney before signing. Nor were the provisions of the agreement "artfully hidden." *Harper*, 113 Cal. App. 4th at 1406. The agreement was a two-page standalone document, the top of which stated in plain and bolded font "BROOKDALE DISPUTE RESOLUTION AGREEMENT." Though its font was smaller than the font on some of the other documents in Brookdale's employment packet, its font was also as large as or larger than the font on many other forms Brookdale handed to Herman. Finally, the scope of the document would be clear to any lay person. It required that "any legal dispute arising out of or related to [Herman's] employment … be resolved using final and binding arbitration[.]" The rest of the agreement was written in plain English, utilized bolding and underlining for clarity, and was organized by topic across two pages. This stands in sharp contrast to *Kho*'s "single dense paragraph covering … 51 lines[.]" *Kho*, 8 Cal. 5th at 128.

4

Under these circumstances, Herman's agreement to arbitrate his claims was not the product of a substantial degree of oppression or surprise. His agreement with Brookdale involved only a minimal degree of procedural unconscionability.

**II.     The arbitration agreement is not substantively unconscionable to a significant degree.**

Substantive unconscionability is "concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Kho*, 8 Cal. 5th at 130 (internal citations omitted). Contract terms may be substantively unconscionable where they are "overly harsh," "unduly oppressive," or so "unfairly one-sided" as to "shock the conscience[.]" *Id.* at 129–30 (collecting cases). Given the minimal procedural unconscionability here, Herman must demonstrate a high degree of substantive unconscionability to render the arbitration agreement unenforceable. *Cf. id.* at 130.

Herman raises three arguments to demonstrate substantive unconscionability. He first contends that the agreement lacks mutuality. The plain language of the agreement, however, demonstrates its applicability to both parties in most respects. Most of the agreement's provisions apply in equal force to both "Brookdale and [Herman]." For example, both parties must submit to arbitration, either party may initiate arbitration, and the parties together must select an arbitrator. Similarly, the scope of the agreement encompasses all claims that may arise during employment, not solely the types of claims that an employee rather than an employer might bring.

Herman is correct that the agreement is not reciprocal in every respect. For example, though both parties waive their rights to bring class actions under the arbitration agreement, in practice Herman is the only party who might sue on behalf of a class. But class action waivers are enforceable under the FAA as a matter of settled law. *See AT&T Mobility LLC v. Conception*, 563 U.S. 333, 352 (2011). The agreement also waives Herman's right to bring a representative action under California's Private Attorneys General Act (PAGA). Although the agreement preserves his right to arbitrate individual PAGA claims, its wholesale waiver of representative PAGA claims is unenforceable as a matter of California state law. *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 383–84 (2014); *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022) (holding that *Iskanian*'s rule that arbitration agreements "construed as a wholesale waiver

5

of PAGA claims" are unenforceable under California state law is "not preempted by the FAA"). But Herman's complaint does not assert any PAGA claim, and the agreement's PAGA provision includes a severability clause that allows the remainder of the agreement to stand even though the representative PAGA waiver is unenforceable. *See, e.g.*, *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1121 (E.D. Cal. 2023). Further, the agreement favors Herman over Brookdale in other respects, such as by requiring Brookdale to pay the arbitrator and all arbitration fees. In combination, these limited non-mutual clauses are not the types of provisions that California courts have recognized as overly favorable to one side.

Herman next argues that the terms of the agreement are overly confusing or unfair. Herman argues, for example, that it is contradictory for the agreement to assign contract interpretation disputes to the arbitrator while assigning enforceability disputes to the court. But that provision reflects current FAA law. *See, e.g.*, *Henry Schein v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."). The fact that the agreement does not specify arbitration rules or identify an arbitrator does not render the agreement unfair. *See HM DG, Inc. v. Amini*, 219 Cal. App. 4th 1100 (2013) ("[N]either the absence of a definite method, nor the presence of 'alternative options,' for appointing an arbitrator renders an otherwise valid arbitration agreement unenforceable."). Nor is it unfair for the agreement to encourage "Brookdale and [Herman to] … try to resolve disputes informally before resorting to Arbitration" merely because doing so might give Brookdale a sense of the nature of Herman's grievances. *Cf. Sanchez v. Carmax Auto Superstores Cal., LLC*, 224 Cal. App. 4th 398, 406 (2014) ("It is hard to see how the provision of a required form to request arbitration which requires the employee to identify the nature of the dispute and known witnesses is unconscionable."), *overruled in part on other grounds by Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024). Voicing a grievance in an informal setting may lead to a timelier and less costly resolution. And even if the informal resolution provision does favor Brookdale, its language is more aspirational than obligatory. Herman has not clearly demonstrated that the terms are either confusing or unfair.

Finally, Herman argues that the confidentiality provision is unconscionable because it

1    prevents future employees from taking advantage of findings in past arbitrations. Relying on

2    *Baltazar*, Herman argues that a confidentiality provision must have a commercial basis to be

3    enforceable. But unlike the provision at issue here, *Baltazar* considered a non-mutual

4    confidentiality clause, holding that "a contract can provide a 'margin of safety' that provides the

5    *party with superior bargaining strength* a type of extra protection for which it has a legitimate

6    commercial need without being unconscionable." *Baltazar*, 62 Cal. 4th at 1250 (emphasis added)

7    (citing *Armendariz*, 24 Cal. 4th at 117). Herman is correct that a legitimate commercial basis can

8    save a non-mutual confidentiality clause from a finding of per se unconscionability, but *Baltazar*

9    did not hold that a legitimate commercial basis is strictly necessary for a party to avoid an

10   unconscionability defense in all instances. Indeed, numerous California court have held that such

11   provisions are not categorically unfair or oppressive. *See, e.g.*, *Woodside Homes of Cal., Inc. v.*

12   *Superior Court*, 107 Cal. App. 4th 723, 732 (2003) (concluding that, regardless of "the fairness or

13   desirability of a secrecy provision with respect to the parties themselves," there is "nothing

14   unreasonable or prejudicial about it"); *Sanchez*, 224 Cal. App. 4th at 408 ("The … provision

15   requiring confidentiality is not unconscionable.").

16        To the extent that Herman relies on *Murrey v. Superior Court*, 87 Cal. App. 5th 1223

17   (2023), that case does not compel a finding of significant substantive unconscionability. *Murrey*

18   concluded that an agreement to compel arbitration between Murrey and her employer was

19   unconscionable. In doing so, the court acknowledged that a confidentiality provision like the one

20   in Herman's contract primarily favors employers by "putting companies in a superior legal posture

21   for future arbitration proceedings." *Id.* at 1254 (citing *Ting v. AT&T*, 319 F.3d 1126, 115–52 (9th

22   Cir. 2003)). Such provisions "deny[] access to any information about other claims against the

23   employer to other potential victims of [similar conduct]" and thus prevent the development of new

24   precedent. *Id.* at 462 (citations omitted). In this regard, the confidentiality provision in Herman's

25   contract exhibits some degree of substantive unconscionability.

26        But *Murrey* is dissimilar to the facts presented here in many respects. For example, *Murrey*

27   focused on the effect of confidentiality provisions in the specific context of workplace sexual

28   harassment. The court cited Congressional testimony and findings regarding the manner in which

secretive arbitration provisions foster workplace environments that do more to protect serial harassers than to prevent harassment. *Id.* at 1253–54. Herman has not alleged analogous facts here. Further, the court in *Murrey* had already found that the contract contained a significant degree of procedural unconscionability, meaning that Murrey's burden to demonstrate substantive unconscionability was lower than Herman's here, given the limited procedural unconscionability present. Finally, the *Murrey* court concluded that numerous provisions unrelated to the confidentiality clause were also substantively unconscionable. For example, Murrey's contract limited discovery and witness testimony in a manner that tilted the scales towards her employer, and the contract exempted from arbitration only the claims that her employer "[was] most likely to bring against its employee[s]." *Id.* at 1251 (citations omitted). As discussed previously, Herman's contract does not contain such unfairly one-sided provisions.

Although the confidentiality provision in Herman's contract exhibits a degree of substantive unconscionability, it is insufficient to invalidate the arbitration agreement as a whole given the limited procedural unconscionability present here.

## CONCLUSION

For the forgoing reasons, Brookdale's motion to compel arbitration is granted. Because the arbitration agreement covers all of the claims that Herman asserts in this case and because no party has requested a stay of these proceedings pending arbitration, the case is dismissed. Should the parties find themselves unable to select a mediator, they may, per the terms of the arbitration agreement, petition the Court to appoint one for them. The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: January 27, 2025

P. Casey Pitts
United States District Judge

8